IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES BRADLEY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No.   1:13cv308-WHA |
| ARMY FLEET SUPPORT, LLC, etc., | ) |
| | ) (wo) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

This cause is before the court on a Motion for Summary Judgment filed by Defendant Army Fleet Support, LLC, a Division of L-3 Communications ("AFS") (Doc. #23), and two Motions to Strike filed by the Defendant (Doc. #41, 42).

The Plaintiff, James Bradley ("Bradley"), filed a Complaint in this case on May 6, 2013, bringing claims against AFS for violation of the Family Medical Leave Act ("FMLA") through termination and retaliation.

For reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

**II.   SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if there is no genuine issue as to any material fact and    . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, relying on submissions which it believes

demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. *Id.* at 324.

Both the party asserting that a fact cannot be, and a party asserting that a fact is genuinely disputed, must support their assertions by citing to particular parts of materials in the record, or by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials under Rule 56(c)(1)(A) include depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

Bradley worked for AFS from November 1998 until March 2013. At the time of his termination, Bradley was a Technical Inspector. According to his Declaration, his job required him to "get on ladders and climb on aircraft." (Doc. #29-1 at ¶13). Bradley is also the primary caregiver for his son who requires specialized medical care.

On March 4, 2013, Bradley informed AFS that he would need to use FMLA leave on March 18, 2013 to take his son to a doctor's appointment.[1] On March 10, 2013, Bradley badly injured a finger on his left hand at home, and called his supervisor to inform him that he would be seeing an orthopedic surgeon about his finger the following day.

Bradley saw the orthopedic surgeon on March 11 and scheduled surgery for the next day, March 12. Bradley states in his Declaration that the surgeon informed him that he could expect to be out of work for four to six weeks, resulting in a return to work date between April 9 and April 23, 2013. (Doc. #29-1 at ¶9). Also on March 11, Bradley called the Human Resources Department of AFS and was told by Human Resources Administrative Specialist Arlene Harris that all he needed to do to be out on leave for an extended period due to his injury was to tell his supervisor. Bradley called his supervisor, Jerry Lonidier ("Lonidier"), and told him he was scheduled for surgery and could be out of work for four to six weeks and Lonidier said "ok." (Doc. #29-1 at ¶11).[2]

Bradley had surgery on March 12. On March 13, Bradley called Lonidier and they

---

[1] AFS has moved to strike statements about Bradley's son's condition as irrelevant, but the court finds those statement to bear some relevance in this case, and will only consider them to the extent they are relevant.

[2] AFS has moved to strike the portion of Bradley's Declaration in which he explains his interpretation of what was meant when Lonidier stated "ok." when Bradley told him that he would need to be out for four to six weeks , as improper opinion testimony. The court will only consider that Lonidier was advised that Bradley would be absent four to six weeks, and not Bradley's statement as to his understanding of Lonidier's "ok."

3

discussed his estimated return to work date of between April 9 and 23, 2013. Lonidier said he would make a note about Bradley's need for time off, his expected return date four to six weeks in the future, and his scheduled follow-up visit with the doctor on March 25, 2013. (Doc. #29-1 at ¶13). Lonidier further told him that Bradley "had to be 100% before [he] could come back to work because there wasn't any secretary work [he] could do." (Doc. #29-1 at ¶13). Bradley also learned that Lonidier would no longer be his supervisor and his new supervisor was Wayne Mowbray ("Mowbray").

Melvin Revert, an AFS employee, has stated in a Declaration that on March 13 he completed a log entry at the end of his shift which states as follows: "TI—James B. out surgery 4-6 weeks." (Doc. #29-7 at ¶5). Melvin Revert states that Lonidier told him Bradley would be out of work four to six weeks. (Doc. #29-7 at ¶5).

On March 14, Bradley spoke to his new supervisor, Mowbray, and told him about the surgery. He states in his Declaration that he told Mowbray he had had surgery on March 12, that he was expected to return to work somewhere between April 9 and 23, but he had a follow-up appointment scheduled for March 25, 2013, during which he hoped to get a more specific return to work date. (Doc. #29-1 at ¶15). He states that "Mowbray said ok and assured me that I was taken care of." (Doc. #29-1 at ¶15).[3]

---

[3] In its list in its Reply Brief of Bradley's disclosures to AFS (Doc. #43 p.11), AFS omits Bradley's disclosure to Mowbray on March 14 that Bradley would be out four to six weeks. The court notes that Mowbray denies that he was ever told this, stating in his deposition "I didn't know and I never heard that he was going to be out four to six weeks . . . ." (Doc. #40-5 at p. 101:2-7). Bradley's Declaration is consistent with the testimony on page 101 of his deposition, cited by AFS, in which he stated as follows: "I said I'm going to be out four to six weeks. He (Mowbray) said I've got your time covered." (Doc. #44-1 at p.101:21-23). In ruling on AFS's Motion for Summary Judgment, the court must accept the non-movant's facts as true. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

4

By March 15, Bradley developed an infection, and scheduled a doctor's appointment for March 19.   On March 17, Bradley took his son for the scheduled doctor's appointment.

On March 19, Bradley sent a text message to Mowbray and told him he had an appointment and was trying to get released to come back to work.

On March 20, Bradley saw the doctor who then provided him a note which said that Bradley had been released to "sedentary duty only, no use of right hand" and "may return to work on March 26, 2013." (Doc. #29-10).   Bradley was unable to reach Mowbray by phone that day. On March 21, Bradley's wife took his doctor's note to Mowbray's office and left it there.

On Monday March 25, the doctor released Bradley to return to work on March 27, with no use of his right hand.   (Doc. #29-11).

Also on March 25, Mowbray had an email exchange with Laura Swaim in AFS Human Resources reporting that Bradley had been out since March 11 with a finger injury and inquiring as to his status.   (Doc. #44-5).   Mowbray then reported by email to Theresa Davis, Human Resources Generalist II—Benefits, that Bradley had been out on employee sick leave.   Theresa Davis told Mowbray in an email to change Bradley's leave code from "employee sick" to "unauthorized absence" and that the labor department needed to send a job abandonment letter. (Doc. #44-5).

Penny Westrick ("Westrick"), the Manager of Labor Relations at AFS, gives a slightly different version of the events.   She states in her Declaration that Mowbray informed her that Bradley was absent from work on March 20, 21, and March 22, and had not called in. (Doc. #24-3).   Westrick states that the usual and customary policy at AFS is that an employee calls and notifies his supervisor that he will be absent from work and that an employee's failure to come to

5

work as assigned and notify the appropriate person for three consecutive days is considered voluntary job abandonment, in violation of the Collective Bargaining Agreement ("CBA"). (Doc. #24-3 at ¶3).

In her deposition, Westrick was read the call-in policy provision and asked whether it requires a call-in every day. Westrick answered, "No, as long as he was giving clear dates and times." (Doc. #40-2 at p.193: 19-22). Specifically with regard to Bradley, Westrick testified in her deposition that Bradley was not required to call-in every day between March 11 and March 14 to say he was going to the doctor on March 14, because he told them on March 11 that he was going to the doctor on March 14. (Doc. #40-2 at 193:22-194:6).

Bradley received a letter dated March 25, 2013 from Westrick terminating his employment. The letter states that Bradley violated a work rule prohibiting unauthorized absences, a work rule prohibiting unauthorized absences on three consecutive days, and a provision of the CBA which states that seniority is broken when an employee is absent for three consecutive days without reporting his absence. The letter further states that Bradley only contacted his employer on March 11, March 14, and March 19 and never contacted Human Resources. (Doc. #24-2).

AFS presents evidence that the Union filed a grievance on Bradley's behalf, and a hearing was held on April 5, 2013. After the hearing, the Union withdrew the grievance.

## IV. DISCUSSION

AFS initially moved for summary judgment as to Bradley's FMLA interference claims and retaliation claim based on a single argument applied to all claims: even if Bradley's absences on March 20, 21, and 22, 2013 were FMLA-qualifying, he failed to comply with the call-in

6

requirement of the CBA. In its reply, AFS appeared to raise an additional ground of failure to present a grievance to arbitration, as to which the court asked for additional briefing. The court will first address the interference claims, and then the retaliation claim.

### A. FMLA Interference Claims

To establish an FMLA interference claim an employee must demonstrate by a preponderance of the evidence that he was denied a benefit to which he was entitled. *Pereda v. Brookdale Senior Living Communities*, 666 F.3d 1269, 1274 (11th Cir. 2012) (quotation omitted). An employer can avoid liability if it can demonstrate that it refused to provide the benefit for a reason wholly unrelated to the FMLA leave. *Strickland v. Water Works and Sewer Bd.*, 239 F.3d 1199, 1208 (11th Cir. 2001).

Bradley claims that his FMLA rights were interfered with because his employer did not appropriately designate his absence arising from his March 10, 2013 injury as FMLA leave, and terminated him.

### 1. Improper Designation

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period" for "a serious health condition that makes the employee unable to perform the functions the position of such employee" and has a right to be restored to employment following that period of leave. 29 U.S.C. § 2612(a)(1)(D). The incapacity portion of the FMLA is distinct from the Americans with Disabilities Act, so that inability to work under the FMLA means an inability to work in the employee's current job. *See Hulbert v. St. Mary's Health Care System, Inc.,* 439 F.3d 1286, 1295 (11th Cir. 2006). An employee is unable to perform the functions of his position if he is "unable to work at all or . . . unable to perform any

one of the essential functions of the employee's position." 29 C.F.R. §825.123.

Employers are responsible for designating leave as FMLA-qualifying, and when the employer has enough information to determine whether leave is being taken for a FMLA-qualifying reason, the employer must notify the employee within five business days whether the leave will be designated and counted as FMLA leave. 29 C.F.R. § 825.300(d)(1).

In giving notice of the need for leave, an employee need not expressly invoke the FMLA. *Cruz v. Publix Super Markets, Inc.,* 428 F.3d 1379, 1383 (11th Cir. 2005). If the employee states that "leave is needed," "the employer will thereafter be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b) (2009). The notice must be sufficient to make the employer aware that the employee needs FMLA-qualifying leave, the anticipated timing, and the duration of the leave. *Cruz,* 428 F.3d at 1383.

Bradley has argued that his telephone calls with Lonidier were sufficient to trigger AFS's obligation to designate his leave as FMLA, or inquire into whether the absences should be categorized as FMLA. In paragraph 13 of his Declaration,[4] Bradley stated that he talked to his then-supervisor Lonidier on March 13 and told him that his estimated return to work date was April 9 to 23, and that Lonidier told him that he "had to be 100% before [he] could come back to work because there wasn't any secretary work [he] could do." (Doc. #29-1 at ¶13).[5] Bradley also presented evidence in the form of his Declaration that his job as Technical Inspector required that he get on ladders and climb on aircraft. (Doc. #29-1 at ¶13). AFS does not dispute Bradley's

---

[4] The Motion to Strike portions of Bradley's Declaration does not seek to strike this paragraph.
[5] AFS moves to strike Bradley's statement about Lonidier's statement about the circumstances under which he could return as it relates to a later, March 20 release, arguing that Bradley had no personal knowledge of what Lonidier's response, had he been his supervisor, would have been to the March 20 release. The court will not consider his statement as a statement of what Lonidier would have thought about the March 20 release.

evidence of the requirement of his job to climb ladders and aircraft.

When asked for further briefing on the issue of whether AFS conceded that Bradley's leave was FMLA-qualifying, AFS argued that the absences on March 20, 21, and 22 did not qualify for FMLA treatment because Bradley's condition did not affect his ability to perform the functions of his job.[6] AFS points out that Bradley was released for "sedentary work," on March 20, which AFS states was not a limitation that would have made him "unable to work at all or . . . unable to perform any one of the essential functions of the employee's position," citing 29 C.F.R. §825.123. AFS argues that Bradley's health care provider did not restrict Bradley from performing essential functions of the technical inspector job. Finally, AFS argues that Bradley did not give AFS sufficient information to determine whether the FMLA applied because when Bradley communicated with Mowbray on March 19, Bradley acted as though he would be released to work, but he actually had an infection, and was not expecting to be released until his follow-up appointment on March 25. Therefore, AFS says Bradley deprived AFS of the ability to meaningfully inquire into Bradley's health condition.

While a release to sedentary duty does not demonstrate that Bradley could not work at all, the evidence in this case, viewed in a light most favorable to the non-movant, supports a finding that Bradley was unable to perform any one of the essential functions of his position. Bradley's unrefuted evidence is that he had to get on ladders and climb on aircraft in his position. AFS appears to be arguing that Bradley could have been given job tasks he could perform. The leave provisions of the FMLA, however, are "wholly distinct from the reasonable accommodation

---

[6] Initially, in the reply, AFS argued that there was no interference because Bradley requested to designate the absence as employee sick leave, rather than FMLA leave. This argument appears to be directed only to the designation of leave as a separate claim which, for reasons to be discussed, is not a separate claim in this case.

9

obligations of employers covered under the ADA." 29 C.F.R. § 825.702(a) (internal brackets omitted).   The Eleventh Circuit has found that an employee who is unable to perform an essential job function is not entitled to reinstatement upon returning from FMLA leave. *See Grace v. Adtran, Inc.*, 470 F. App'x 812, 816 (11th Cir. 2012).   Therefore, in view of Bradley's unrefuted evidence that his job required climbing on ladders and aircraft, a release to sedentary work creates a question of fact as to whether he was unable to perform any one of the essential functions of his position.   Furthermore, the release provided by Bradley to Mowbray identified that he was only able to use his right hand, and, a reasonable jury could find, could have been inquired into by AFS.

These questions of fact, however, do not necessarily allow Bradley to proceed on a separate claim for interference though failure to designate his FMLA leave.   The Supreme Court has explained that to prevail on a cause of action under the FMLA, the employee must prove interference, but is not entitled to relief unless the employee has been prejudiced by the violation, because an employer is only liable for compensation and benefits lost as a result of the violation. *See Ragsdale v. Wolverine World Wide, Inc.* 535 U.S. 81, 89 (2002).   Although Bradley has sought to separate out the designation of the leave from his termination, Bradley does not contend that the failure to designate the leave as FMLA leave caused him to lose leave time, but rather that his termination, was an interference with his FMLA rights.   Therefore, to the extent that Bradley has asserted a separate claim based on designation of leave, summary judgment is due to be GRANTED as to that claim.

The questions of fact created as to whether the leave was FMLA-qualifying are, however, relevant to the claim for interference through termination.

2.   Termination

As stated above, AFS moves for summary judgment assuming that Bradley qualified for FMLA leave, and argues that it cannot be held liable for violations of the FMLA because Bradley was terminated for abandoning his job when he failed to notify his employer of his absences in accordance with the CBA.  AFS relies in part on *Gilliam v. United Parcel Service, Inc.,* 233 F.3d 969 (7th Cir. 2000), for the proposition that an employer does not violate the FMLA by terminating an employee for failing to follow notice provisions in a CBA.  AFS also points to a decision from another judge of this court, *Spraggins v. Knauf Fiber Glass GmbH, Inc*., 401 F. Supp. 2d 1235 (M.D. Ala. 2005) (Thompson, J).  In *Spraggins*, the court looked at a company's notice requirements and determined, based on the regulations implementing the FMLA, that if it is not practical for an employee to give 30-days advance notice of the need for leave, the employee must give notice as soon as practicable under the facts and circumstances, and that requirement does not violate the FMLA. *Id*. at 1239.  AFS says that its policy requires that Bradley call-in to report his unforeseeable absence on the day of the absence, and that Bradley did not do so, therefore, consistent with the cases cited, Bradley was terminated for a reason unrelated to FMLA leave.

Bradley responds that he has presented evidence that AFS regularly waived the daily reporting requirement for authorized absences.  In so arguing, he has relied in part on his Declaration, but also on the Declarations of other employees.[7]

AFS responds to Bradley's evidence arguing that the four instances of alleged waiver do

---

[7] AFS has moved to strike the Declaration of Nicole Williams, arguing that she has provided improper expert opinion testimony as to the discretion of supervisors and company policies, and that she has no personal knowledge of the practices of the Quality Control Department, where Bradley was employed.  The court has not considered Williams' Declaration in ruling on the Motion for Summary Judgment, and the Motion to Strike is due to be DENIED as moot.

11

not alter the procedures of AFS, citing a provision of the CBA which states that the waiver or breach of the agreement by either party does not constitute a precedent for any further waiver of such breach or condition.

Questions of fact have been created as to whether the call-in requirement of the CBS applied to Bradley's leave on March 20, 21, and 22 under AFS policy, irrespective of any waiver provision.  Westrick explained AFS policy in her deposition, stating that under the call-in procedure, an employee does not have to call-in every day, "as long as he was giving clear dates and times."  (Doc. #40-2 p.193:19-22).  Westrick gives the following explanation:  "between the 11th and the 14th we did not expect him to call every day and tell us I'm going back to the doctor on the 14th; today is the 14th, I'm going to the doctor.  When he told us that on the 11th we expected to either see him or hear from him again on the 14th."  (Id. at p.193:22-194: 6).

Consistent with this explanation of the policy, in his deposition Lonidier described a previous injury-related absence Bradley had when a beam had hit Bradley in the face and explained that for that absence, Bradley did not have "to respond every day because [Lonidier] knew he was going to be out, and he also gave [Lonidier] a date when he was going to be back." (Doc. #40-4 at p.23:2-8).

Bradley stated in his Declaration that he called Human Resources on March 11 and told Arlean Harris that he had surgery scheduled and that he would need to be off from four to six weeks. (Doc. #29-1 at ¶10).   He asked whether there was anyone else he needed to talk to about the need for extended leave and was told no, and that the only thing he needed to do was to let his direct supervisor know about the situation.  (Doc. #29-1 at ¶10).  He spoke to his supervisor, Lonidier, that day, and Lonidier told him that he would make a note of his expected return date

12

four to six weeks in the future. (Doc. #29-1 at ¶13). Bradley then spoke to his new supervisor, Mowbray, on March 14, and told him that his doctor expected him to return to work in April, that he had a follow up appointment March 25, that he had given the details to Lonidier, to which Mowbray said "ok" and said he had his time covered. (Doc. #29-1 at ¶15; Doc. #44-1 at p. 101:22-23).

Viewing Westrick's interpretation of the CBA in a light most favorable to the non-movant, and accepting Bradley's timeline evidence,[8] when Bradley called on March 11 and said he would be out until at least April 9, with a follow-up appointment on March 25, he gave a clear date of return and he did not have to call-in every day.

AFS has taken the position that Mowbray understood Bradley's position to have changed, and that his incapacity had subsided as of March 19 (Doc. #53 at p.3), because on that day he told Mowbray by text that he was going to the doctor on March 20 and would try to be released to come back to work. AFS also argues that Bradley was never relieved of the responsibility to call-in every day, and that the March 20th doctor's note was not a report compliant with the CBA because he did not call-in.

Even accepting that the March 20 doctor's note was not a call sufficient to meet the requirements of the CBA, the information conveyed in the release could be found by a jury to support that at the time of his termination, Bradley was not required to call-in every day under Westrick's explanation of the call-in policy. As noted, Westick's deposition testimony can be

---

[8] Westrick has stated that Bradley called AFS on March 11 and said he would be back on the March 14, and then called on March 19 and said he was going to the doctor that day and they never heard from him again. (Doc. #40-2 p.p. 189: 2-9). For purposes of deciding the Motion for Summary Judgment, the court accepts Bradley's version of the reporting timeline. *Anderson*, 477 U.S. at 255.

read to say that an employee does not have to call-in every day if there are clear dates communicated. The March 20 release was a release to return to work on March **26**. (Doc. #29-10). Therefore, the release communicated a clear return date of March 26, after Bradley's absences on March 20, 21, and 22.

These facts are similar to the facts analyzed by another district court in this circuit in *Knox v. Cessna Aircraft Co.*, No. 4:05cv131(HL), 2007 WL 2874228 (M.D. Ga. Sept. 26, 2007). In that case, the plaintiffs stated that the Human Resources Manager for his employer told him that she would inform his supervisors that he would be absent, and he did not have to comply with the call-in requirement. This same person was then the person who made the decision to terminate the plaintiff's employment. *Knox*, 2007 WL 2874228 at *6. The court reasoned that a jury could infer that the defendant had knowledge that the plaintiff was going to be absent for the rest of the week so that the plaintiff did not need to call in his absences. *Id.* The court found sufficient issues of fact to allow a jury to conclude that the plaintiff was fired for taking FMLA leave, and not for violating the call-in policy. *Id.*

This court notes that the FMLA does not prohibit employers from terminating employees who do not comply with an internal call-in policy for absences. *See, e.g., Spraggins.,* 401 F. Supp.2d at 1239-40. In view of the facts discussed above, however, this case is distinct from the cases cited by AFS, and is more like *Knox*, because there are questions of fact in this case as to whether the daily call-in requirement in the CBA applied to Bradley on March 20, 21, and 22, 2013. In short, the court does not agree with AFS that the evidence is undisputed that Bradley was required to call-in each of the three days in which he was absent. Therefore, due to those questions of fact, and questions of fact as to whether his leave was FMLA-qualifying, the court

14

concludes that the grounds articulated for summary judgment in AFS's motion are unavailing.

An additional potential ground for summary judgment was raised by AFS in its Reply. AFS argues that Bradley has disputed the application of the CBA, which should have been raised in a grievance and arbitrated under the terms of the CBA.   When given the opportunity by the court to respond to this argument, Bradley focused on why he was not required to arbitrate his FMLA claim, but also argues that his termination letter only cites violation of a work rule regarding unauthorized absences, which is not in the CBA, so the CBA violation now relied on was not discussed at the grievance hearing.    It appears to the court that the CBA issue has been raised by AFS in a defensive posture, and so failing to arbitrate that interpretation of the CBA should not preclude Bradley's FMLA interference claim.

### B. FMLA Retaliation

FMLA retaliation is distinct from FMLA interference in that to succeed on a FMLA retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010).   A retaliation claim, therefore, is different from an interference claim because an employee must show intent to retaliate. *Id.*

"Where, as here, a plaintiff alleges an FMLA retaliation claim without direct evidence of the employer's retaliatory intent, [courts] apply the burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green.*" *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).[9]   A plaintiff bringing an FMLA retaliation claim must

---

[9] The parties have not argued that the "but for" causation standard applicable to Title VII

show that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. To state a prima facie case of retaliation under the FMLA, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action, and (3) the adverse action was causally related to a protected activity.  *Id.*   If the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.*

AFS did not move for summary judgment on any grounds specific to the retaliation claim, relying only on the central argument that Bradley violated the call-in requirement of the CBA.

It is somewhat unclear whether Bradley contends that his protected FMLA activity was taking FMLA leave to care for his son, or his arguably FMLA-qualifying leave for the injury to his finger.   For the reasons discussed above in connection with the interference claims, it appears that Bradley has created sufficient issues of fact as whether he was taking FMLA-qualifying leave based on the leave he took for his injury.

The employer's articulated reason for Bradley's termination is that he violated the call-in procedure of the CBA.

To show that the employer's reasons were pretextual, the plaintiff must demonstrate "such

---

retaliation cases applies to an FMLA claim.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. __, 133 S.Ct., 2517 (2013).   Although not deciding the issue of whether "but for" causation applies in an FMLA mixed-motive case, the Fifth Circuit has noted that the FLMA uses the word "for" rather than the phrase "because of" which is contained in the Title VII and ADEA provisions at issue in Supreme Court cases which have adopted "but for" causation.  *Ion v. Chevron USA, Inc.*, 731 F.2d 379, 390 n.11 (5th Cir. 2013).   Because the parties have not argued it, and the Supreme Court and the Eleventh Circuit have not spoken on the issue, this court will follow the binding Eleventh Circuit precedent in *Hulbert* establishing analysis of an FMLA retaliation claim in analyzing this claim.

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997).

The questions of fact created as to whether Bradley was required to follow the CBA call-in procedure, discussed above in connection with his interference claim, are also sufficient to create a question of fact as to whether the articulated reason is true, for purposes of establishing pretext for his retaliation claim.  *See Knox*, 2007 WL 2874228 at *8 (finding that "the same evidence that the Court cited in its discussion of Plaintiff's interference claim also creates genuine issues of material fact as to whether Defendant's [legitimate non-retaliatory reason] is pretextual.").

AFS also argues in its reply, however, that it is not sufficient to demonstrate pretext to show that the defendant had a mistaken belief about the facts, but the plaintiff instead must show that the employer did not honestly believe the facts on which it based its decision, citing *Smith v. Construction Datafax, Inc.,* 971 F. Supp. 2d 1226 (N.D. Ala. 2012).  The court is also aware the knowledge on the part of one person of protected activity cannot be imputed to a corporation for purposes of FMLA retaliation.  *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 800 (11th Cir. 2000).

Although it is not clear, it appears that AFS is arguing that Westrick and/or Mowbray,[10] honestly believed that Bradley abandoned his job because he failed to call-in to work on March 20, 21, and 22, and they had never been informed that he would be out those days.  Whether cast as an honest belief that he was required to call-in, or a lack of knowledge that he was on FMLA-qualifying leave, the issue presented is whether the person who decided to terminate

---

[10] There is a question of fact as to who made the decision to terminate Bradley. Mowbray testified in his deposition that he was trying to figure out who made the decision (Doc. #44-7 p. 154:21-22).

17

Bradley's employment knew he engaged in statutorily-protected activity.

Accepting Bradley's evidence as true, as the court must in ruling on a Motion for Summary Judgment, *Anderson*, 477 U.S. at 255, Bradley spoke to Mowbray on March 14 and told Mowbray he would be out four to six weeks, and that he had a follow-up appointment on March 25, to which Mowbray responded that Bradley "was taken care of." (Doc. #29-1 at ¶15). Although Bradley has not provided evidence that he also communicated with Westrick directly, Westrick states in her Declaration that it was Mowbray who informed her that Bradley was absent from work on March 20, 21, and 22 and had not called-in to give notice of his absences, and she then states that Bradley was terminated for voluntary job abandonment pursuant to AFS policy. (Doc. #24-3 at ¶4). A reasonable finder of fact, therefore, could conclude that the termination of Bradley was caused by a report of absences by a person, Mowbray, whom Bradley has stated was told the extent of Bradley's anticipated absence. *Cf. Stimpson v. Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir.1999) (stating "the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus.").

As further evidence of pretext, Bradley points to the temporal proximity of his leave to his termination. *See Hurlbert,* 439 F.3d at 1298 (stating that the "close temporal proximity between Hurlbert's request for leave and his termination—no more than two weeks, under the broadest reading of the facts—is evidence of pretext, though probably insufficient to establish pretext by itself.") Bradley has also pointed to four persons, Dorothy Thrash, Pamela Bradley, Seth Ward, and Mel Revert, as comparators, to demonstrate that they were not terminated when they did not call-in every day of leave. Bradley has also pointed to what he has characterized as evidence of irregularities in the leave codes used for his absences. Finally, Bradley argues that it was

Mowbray's reporting of absences as being unapproved which triggered Bradley's termination, and there is evidence of derogatory comments by Mowbray about Bradley's taking of FMLA leave.[11]

The court concludes that due to the close temporal proximity of the Bradley's leave and termination, and evidence that reliance on the CBA call-in requirement is false, viewed in a light most favorable to the non-movant, Bradley has adequately created a question of fact as to pretext so as to preclude summary judgment.   Therefore, the court will not address Bradley's other evidence of pretext at this time.   Summary judgment is due to be DENIED as to the retaliation claim.

## V.  CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The Motions to Strike (Doc. #41, 42) are GRANTED to the extent that the Declarations have been considered only to the extent that they are based on personal knowledge and are relevant.   The Motions are DENIED as moot in all other respects.

2. The Motion for Summary Judgment is GRANTED and judgment is granted in favor of Army Fleet Support, LLC and against James Bradley to the extent that Bradley has asserted a separate failure to designate FMLA interference claim.   The Motion for

---

[11] AFS has moved to strike Bradley's evidence about Mowbray's comments regarding FMLA.   Bradley stated in his affidavit that on occasions when he told Mowbray he needed to go on leave because of his son's medical condition, Mowbray would "roll his eyes and say 'you got FLMA so there ain't nothing I can do about it."   (Doc. #29-1 at ¶ 24).   Bradley also states that he left early one day, with approval of the overtime supervisor, and that Mowbray was in the office at the time, but that Mowbray reported him for walking off the job. (Id. at ¶25).   The court will not consider this evidence at this time, pretext having been sufficiently established without it.   If AFS seeks to exclude consideration of this evidence at trial, it can timely move in limine to do so.

19

      Summary Judgment is DENIED in all other respects.

3. The case will proceed on Bradley's failure to reinstate/termination FMLA interference claim, and his FMLA retaliation claim.

Done this 16th day of October, 2014.

                                    /s/ W. Harold Albritton  
                                    W. HAROLD ALBRITTON  
                                    SENIOR UNITED STATES DISTRICT JUDGE